UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,                          Case No. 23-CR-20071

        v.                              U.S. DISTRICT COURT JUDGE
                                        GERSHWIN A. DRAIN
    Antonio Heath

    Defendant.
_____/

**OPINION AND ORDER:**
**(1) DENYING DEFENDANT'S MOTION TO SUPRESS VEHICLE**
**TRACKING INFORMATION [ECF NO. 22];**
**(2) DENYING DEFENDANT'S MOTION TO SUPPRESS SEARCH**
**WARRANT AND PHYSICAL EVIDENCE [ECF NO. 23];**
**AND**
**(3) DENYING DEFENDANT'S MOTION TO SUPPRESS VEHICLE**
**TRACKING INFORMATION AND FOR A FRANKS HEARING [ECF NO.**
**24]**

## I.      Introduction

Defendant Antonio Heath ("Defendant" or "Heath") faces charges for
Possession with Intent to Distribute a Controlled Substance under 21 U.S.C §
841(a)(1); and Felon in Possession of a Firearm under 18 U.S.C § 922(g)(1).

Before the Court are three motions to suppress evidence. On June 20, 2023,
Heath filed a Motion to Suppress Vehicle Tracking Information (the "First Motion
to Suppress") [ECF No. 22]. The Government responded on August 1, 2023 and

Defendant did not reply. Second, Heath filed a Motion to Suppress Search Warrant and Physical Evidence (the "Second Motion to Suppress") [ECF No. 23] on June 20, 2023. The Government responded on August 1, 2023 and Heath did not reply. Lastly, Heath filed a Motion to Suppress Vehicle Tracking Information and For a Franks Hearing on June 21, 2023 (the "Third Motion to Suppress"). The Government responded on August 1, 2023 and Defendant did not reply. The Court held oral argument on December 19, 2023 and the Motions are fully briefed.

For the reasons set forth below, all three Motions are denied.

## II.    Discussion

The Motions arise from three separate search warrants issued by Michigan State courts in October and November 2022. Search warrant no. 1 was issued on October 13, 2022. It authorized the Detroit Police Department ("DPD") to "install, maintain, and remove a mobile tracking device in or on" Heath's 2020 Jeep Grand Cherokee, and to monitor the signal from that device for a period of no longer than 45 days. ECF No. 27-1, PageID.204. Search warrant no. 2 was issued on November 15, 2022 and executed against Heath's apartment located at Riverfront Towers in downtown Detroit and an address located at 17205 Warwick Street. Search warrant no. 3 was issued on October 27, 2022 and authorized to police to install a tracking device of Heath's 2022 Jeep. DPD Peace Officer Jeremy Robson ("Officer Robson") submitted affidavits in support of each search warrant application. He was trained in

2

utilization of narcotics informants at the Northeast Counterdrug Training Center, has been employed at DPD for over six years, and has been trained in criminal drug trafficking investigations and identification by DPD as well as outside agencies and law enforcement organizations. ECF No. 29-1, PageID.268.

Below, the Court will describe the law applicable to all motions. However, it will discuss the factual background and analysis associated with each respective motion in the section that corresponds to that motion.

## III. Discussion

### 1. Law Applicable to All Motions

The Fourth Amendment provides that "[t]he right of the people to be secure ... against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. Probable cause is a fluid concept defined by the Sixth Circuit as "reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion." *Unites States v. Lattner*, 385 F.3d 947, 951 (6th Cir.2004), *cert. denied*, 543 U.S. 1095, 125 S.Ct. 979, 160 L.Ed.2d 908 (2005) (citing *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir.1991)). It exists "when there is a 'fair probability' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *Id*. To determine whether

3

a warrant was supported by probable cause, "[courts] look only to the four corners of the affidavit." *United States v. Waide*, 60 F.4th 327, 337 (6th Cir. 2023) (quoting *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016)).

To help protect an individual's Fourth Amendment rights, courts apply the "exclusionary rule," which provides that evidence obtained in violation of the Fourth Amendment will be excluded from use against a defendant at trial. *United States v. Clariot*, 655 F.3d 550, 553 (6th Cir.2011). The exclusionary rule is premised on "deterrence—to discourage the police from violating the Fourth Amendment by prohibiting them from leveraging illegal encounters into criminal convictions." *Id*.; An exception to the rule occurs when an officer conducts an unconstitutional search in "good faith reliance on some higher authority, such as a warrant or a statute, even if the warrant or statute were later held invalid or unconstitutional." *United States v. Buford*, 632 F.3d 264, 271 (6th Cir.2011), cert. denied, —— U.S. ——, 132 S.Ct. 370, 181 L.Ed.2d 235 (2011). In that event, the evidence, though seized unconstitutionally, nonetheless remains admissible because there is no bad faith conduct by the officer to deter. *Id*.

### 2.  Heath's First Motion to Suppress

#### A. Factual Background

Heath's First Motion to Suppress alleges that, on August 23, 2022, DPD was advised of the following "anonymous information" by a "known individual." ECF No. 27-1, PageID.206.

Mr. Antonio Heath "Tone" supplies numerous narcotic locations in the City of Detroit.

1. "Tone" primarily supplies narcotics in the 10th Precinct area Detroit;
2. "Tone" drives a burgundy Jeep Grand Cherokee;
3. "Tone" resides on Warwick near W. McNichols;
4. "Tone" personally picks up money from his narcotics locations including his location on Tuxedo;
5. "Tone" is short, fat and has a light complexion.

*Id*. A little more than six weeks later, the police began investigating Heath. Using law enforcement databases, the police discovered Antonio Heath was the individual identified to police as "Tone", that Heath drove a 2020 Jeep Cherokee, and that he was "associated" with the following residential addresses: 1) 23534 Tireman; 2) 19163 Winthrop; 3) 3333 Tuxedo; 4) 2530 Monterey; 5) 4380 Sturtevant; 6) 15083 Evergreen; and 7) 2468 Monterey. ECF No. 27-1, PageID.206. There was also an active "224 Dope complaint" against the 3333 Tuxedo address, which stated that "drug activity [was] going on at the property." *Id*.

The police conducted surveillance and observed that Heath's 2020 Jeep was in the driveway at the Tuxedo residence on October 10, 2022. *Id*. Officer Robson further alleged that police saw a female enter the residence and leave about 10 minutes later. *Id*. A male also allegedly entered the residence and left about five minutes later; Officer Robson noted that these short stays are "[c]ommonly observed with suspected narcotics transactions." *Id*. at PagID.207. Heath left the 3333 Tuxedo address in the 2020 Jeep, stopped at a 2911 Sturtevant residence, and a black female passenger exited the car and made contact with two black males on the porch for about one minute. *Id*. The female passenger got back into the Jeep and they allegedly stopped at a gas station on Linwood where the female passenger exited the vehicle. *Id*. She got back into the Jeep and they drove to a vacant house where the female passenger exited the vehicle, looked through the windows of the house, she returned to the vehicle, and they drove to 2647 Sturtevant where the female passenger exited the vehicle. *Id*. The Sturtevant address was allegedly "a known narcotics location" *Id*. When that passenger returned the vehicle, they drove back to the 3333 Tuxedo address. *Id*.

About five years earlier, on November 21, 2017, the police executed a narcotics search warrant at 2530 Monterey, where Heath was present and heroin, cocaine, and weapons were recovered. *Id*. And about two years after that, on October 29, 2019, the police executed a narcotics search warrant at 2633 Monterey; Heath

was inside but Officer Robson does not state that any criminal evidence was found. *Id*. Heath also had a prior criminal record of eight felony convictions for controlled substance offenses in 1989, 1997, and 2005. ECF No. 27-1, PageID.208.

Based on that information, and the swearing Officer's training and experience, the police obtained a warrant on October 13, 2022 to place a tracking device on Heath's 2020 Jeep.

## B. Applicable Law and Analysis

Heath asks the Court to suppress evidence obtained from the tracking device installed on his 2020 Jeep. He argues that "the October 13, 2022 Affidavit lacked sufficient probable cause to support a warrant to use a tracking device."  ECF No. 22, PageID.114. Specifically, Heath challenges the affidavit because: (1) it relies in part on certain anonymous information relayed to DPD, and (2) Officer Robson, the affiant, makes no allegations pertaining to veracity and reliability of the information.

It is true that the Sixth Circuit has "explained that probable cause is lacking when a warrant is issued based on an affidavit relying on information from an anonymous tip that is sparse in detail and inadequately corroborated by the police." *United States v. Helton*, 35 F.4th 511, 519 (6th Cir. 2022) (quoting *United States v. Leake*, 998 F.2d 1359, 1365 (6th Cir. 1993) (internal quotations omitted). However,

Officer Robson declared that the "anonymous information provided by the known individual" was "true and credible." ECF No. 27-1, PageID.208.

Further, it is well established that "while independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause, ... in the absence of any indicia of the informant[s'] reliability, courts insist that the affidavit contain substantial independent police corroboration." *United States v. Coffee*, 434 F.3d 887, 893 (6th Cir. 2006) (alteration in original) (quoting *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005)); See *United States v. Sheckles*, 996 F.3d 330, 341 (6th Cir. 2021) ("an anonymous tip by itself might fall short of probable cause. . .. But 'an anonymous tip that is corroborated by independent police work may' well suffice." (citations omitted)); see also *Helton*, 35 F.4th at 519 ("[a]n anonymous tip's 'minimal probative' value can have 'an increased level of significance,' if it is corroborated." (citation omitted)).

With respect to search warrant no. 1, issued on October 13, 2022, DPD officers corroborated the source's tip by investigating Heath and surveilling him on October 10, 2022. During their intelligence investigation, they confirmed that Heath went by the name "Tone," drove a Jeep Grand Cherokee, and was associated with 3333 Tuxedo, a suspected narcotics residence. During officers' surveillance, they observed Heath with his Jeep Grand Cherokee at 3333 Tuxedo. He conducted two short stays at that residence, which, as Officer Robson noted, is "commonly

8

observed with suspected narcotics transactions." ECF No. 27-1, PageID.207. They also observed Heath leave the residence and go to other locations, including a gas station and a vacant house believed by Officer Robson to be "common places for narcotics transactions to take place." *Id*. There, officers observed Heath engaging in behavior Robson describes—based on his training and experience—as consistent with narcotics trafficking. This included a short stay at 2647 Sturtevant—a residence known to Robson as a narcotics location—and scouting a vacant residence. *Id*. Officer Robson's investigation also revealed that Heath had already been convicted for eight drug charges between 1989-2005, and Heath was present during the execution of two narcotics search warrants in 2017 and 2019. Based on all of this information, the state court judge found that there was probable cause to issue a search warrant.

Viewing search warrant affidavit under totality of circumstances, "courts examine its four corners with great deference toward [the] determination of [the] judge who issued [the] search warrant." *Helton*, 35 F.4th at 518. The issuing judge's probable cause finding "should be reversed only if [he/she] arbitrarily exercised his discretion." *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004). Considering the affidavit under the totality of the circumstances, including the anonymous tip and its corroboration by independent police work, the Court concludes that the affidavit indicated the existence of probable cause for issuance of

the tracker warrant on Heath's 2020 Jeep and the issuing judge's determination was not arbitrary. This ruling is consistent with previous Sixth Circuit precedent. See *United States v. Coleman*, 923 F.3d 450, 454 (6th Cir. 2019) ( the court held that probable cause existed for issuance of a warrant to install a tracking device on a suspected drug dealer's vehicle where a law enforcement agent observed an individual matching the suspect's description drive to another suspected drug trafficker's home in the vehicle and stay only a few minutes, and the suspect had two prior felony convictions for delivery/manufacture of controlled substances). Accordingly, the Court concludes that the tracking warrant was supported by probable cause.

Heath pointed out at oral argument that his conduct observed by police surveillance does not show that he was engaged in drug transactions. But this argument fails because "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 245, 103 S. Ct. 2317, 2335, 76 L. Ed. 2d 527, n.13 (1983).

Heath also avers that "[m]ost of the information in the Affidavit was stale." ECF No. 22, PageID.117. The idea behind the staleness argument is that drugs are consumed over time, and probable cause must exist at the time a search is carried out. *United States v. Davison*, 766 F. App'x 232, 238 (6th Cir. 2019). The staleness inquiry is tailored to the specific circumstances in each case. See *Abboud*, 438 F.3d

at 572. "[T]he length of time between the events listed in the affidavit and the application for the warrant, while clearly salient, is not controlling." *Id*. "[E]ven if a substantial amount of time had elapsed between a defendant's last reported criminal activity and the issuance of the warrant," it is possible that "the warrant had not become stale." *Id*. (internal quotations omitted). The Sixth Circuit has outlined several factors to consider when analyzing staleness:

> (1) "the character of the crime (chance encounter in the night or regenerating conspiracy?)"; (2) "the criminal (nomadic or entrenched?)"; (3) "the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?)"; and (4) "the place to be searched (mere criminal forum of convenience or secure operational base?)."

*Id*. at 573.

Heath does not dedicate any pertinent analysis to these factors. Rather, he relies on *United States v. Brown*, where the Sixth Circuit, making a probable cause determination with respect to a search warrant executed on a residence, held that a suspect's status as a drug dealer, standing alone, does not give rise to a fair probability that drugs will be found in his home. *United States v. Brown*, 828 F.3d 375, 384 (6th Cir. 2016). *Brown* does not purport to address the staleness question. See *Id*. ("we need not also decide whether the information supporting the warrant was stale"). It also fails to offer any support for Heath's lack-of-probable-cause argument because *Brown* turned on the lack of nexus between suspected drug

11

activity and the suspect's home. Indeed, the court explained that "if the affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity, or the evidence of this connection is unreliable, it cannot be inferred that drugs will be found in the defendant's home—even if the defendant is a known drug dealer." *Id.* Given that the subject of Heath's First Motion to Suppress is a tracking warrant executed against his vehicle—not his home—and, as stated *supra*, the anonymous information relied on in the affidavit is corroborated by independent police work that connects Heath's use of the 2020 Jeep to suspected drug activity, *Brown* is distinguishable.

Further, Heath's staleness argument is without merit. In *United States v. Davison*, the Sixth Circuit held that probable cause existed to search a house located on property where the suspected drug dealer had been seen around the time when individuals had conducted controlled buys of crack cocaine from the suspect. *United States v. Davison*, 766 F. App'x 232, 238 (6th Cir. 2019). The court also ruled that the information in the affidavit was not stale—even though one of the buys occurred more than one month before the search warrant was sought—because the last controlled buy occurred on the day before the search warrant was sought, and the earlier buy helped to establish the ongoing drug-trafficking enterprise. *Id.*

Here, DPD got the anonymous information—that Heath was supplying numerous narcotics locations in Detroit—on August 23, 2022. On October 10, 2022,

DPD conducted an "intelligence work-up" on Heath. ECF No. 27-1, PageID.206. The work up revealed that he was associated with the 333 Tuxedo, which had an active complaint for drug activity against it. *Id*. Robson submitted the search warrant affidavit on October 13, 2022—three days after officers had observed Heath engaging in conduct they believed to be consistent with narcotics trafficking. The Affidavit suggests that Heath's alleged drug-selling activities, as reported by the anonymous source on August 23, 2022, was ongoing and had occurred on October 10, 2022, in close temporal proximity to October 13, 2022, the date of the affidavit's submission and the issuance of the warrant.

As the Government notes, in cases where the drug trafficking was ongoing, Courts have affirmed warrants with longer time periods—between the signing of the warrant by the judge and its execution by officers—than the one at issue here. ECF No. 27, PageID.199; see *United States v. Tisdale*, 980 F.3d 1089, 1094 (6th Cir. 2020) (no staleness when agents submitted the affidavit two and a half weeks after observing trafficking-related activity at a house and the court noted that "even if a month had passed, information was not stale given the ongoing nature of the conspiracy and the ample evidence of drug trafficking connected to the address"); and *United States v. Young*, 847 F.3d 328 (6th Cir. 2017) (information was three-to-six weeks old and the affidavit not stale when target drug trafficking organization was ongoing).

The Court finds that the information in the affidavit was not stale, and the search warrant was supported by probable cause to believe Heath was a drug dealer who conducted ongoing drug activities at the time the warrant was issued. Accordingly, Heath is not entitled to suppression under the exclusionary rule, and the Court need not address his arguments pertaining to the good faith exception. On these bases, Heath's First Motion to Suppress is **DENIED**.

On December 15, 2023, days before oral argument, Heath filed a Notice of Intent to Argue Additional Authority regarding Search Warrant for Tracking Devices. He avers that the "tracking warrant was obtained outside of the temporal limit prescribed by Fed. R. Crim. P. 41(E)(c)(i)." ECF No. 31. Presumably, Heath intended to cite Rule 41(e)(2)(C)(i), which provides that "a tracking-device warrant must . . . command the officer to: (i) complete any installation authorized by the warrant within a specified time no longer than 10 days. . ." *Id*. The warrant does not include any such command and the tracker was installed on October 25, 2022, twelve days after the warrant was issued on October 13, 2022. As such, Heath contends that the executing agents violated Rule 41's 10-day limitation and the warrant is therefore invalid.

However, Heath cites no caselaw to support the exclusion of evidence due to a judge's failure to comply with procedural requirements stated in Rule 41(e)(2)(C)(i), or an officers' failure to observe the 10-day requirement. Further,

Heath offers no argument suggesting that the search and ultimate seizure of the location information would not have occurred had the procedural requirements been adhered to. And he does not demonstrate that officers recklessly disregarded procedural requirements. Without a showing of prejudice to the Defendant or reckless disregard of proper procedure by officers, exclusion due to failure to comply with procedural requirements is improper. See *United States v. Twenty-Two Thousand, Two Hundred Eighty-Seven Dollars ($22,287.00), U.S. Currency*, 709 F.2d 442, 446 (6th Cir. 1983) ("Since we determine that the search warrant under which the currency and other evidence seized at Montez's home satisfied the fourth amendment and . . . though the warrant did not satisfy the requirements of Rule 41(c)(1), the exclusionary rule should not be applied here."). See also *United States v. Turner*, 781 F.3d 374, 387 (8th Cir. 2015) (the court held that exclusion of evidence obtained pursuant to the warrant was not the proper remedy where there was no showing of prejudice to defendant or of the government's reckless disregard of proper procedure; in *Turner*, the government failed to designate a judge to which the warrant had to be returned, failed to return the warrant, failed to execute the warrant by installing the device within 10 days, failed to provide the requisite date and time information for installation, and failed provide notice following execution of the warrant). See also *United States v. Chaar*, 137 F.3d 359, 363 (6th Cir. 1998)

("... Rule 41(c)(2)(D) violation does not itself require suppression of this evidence, we must still review the constitutionality of this search. . .").

Between October 18, 2022, and October 25, 2022, officers conducted surveillance on Heath and allegedly observed him travel frequently between 17205 Warwick, 2445 Elmhurst, and 3333 Tuxedo, all suspected drug locations. They also observed him engage in suspected drug transactions and oversee narcotics sales on October 25, 2022, the day the tracking device was installed. On this day, probable cause existed for officers to believe that narcotics evidence would be located through the tracker location information and thus, Defendant was not prejudiced by the delay of installation. Due to the existence of probable cause on October 25, 2022 and the lack of evidence establishing that officers recklessly disregarded procedural requirements, officers' alleged violation of Rule 41's 10-day requirement does not render the exclusionary rule applicable. On this basis, Heath's First Motion to Suppress is **DENIED**.

### 3.  Heath's Second Motion to Suppress

On November 15, 2022, Officer Robson applied for and received a warrant to search: the premises at 17205 Warwick, a particular apartment inside the 200 Riverfront Towers apartments in Detroit, and Heath's person for illegal evidence indicating narcotics trafficking (including ledgers, receipts, telephone numbers, packaging materials), evidence of residency, and currency. ECF No. 28-1,

PageID.237. Heath urges the Court to "enter an Order suppressing any and all evidence seized in the course of the execution of the search warrant at 200 Riverfront Tower" and "all evidence derived therefrom."   ECF No. 23, PageID.126. Since Heath does not challenge the search executed on 17205 Warwick, the Court will describe the factual background, applicable law, and analysis related to the search executed on 200 Riverfront Tower only.

## A. Factual Background

Officer Robson submitted the affidavit attached to search warrant no. 2, issued on November 15, 2022. The affidavit relies on the same "anonymous information" and "intelligence work-up" referenced *supra*. The affidavit also notes descriptions of Heath's activities as observed by DPD surveillance on October 10, 2022, and October 18, 2022. They allegedly observed Heath completing suspected narcotics transactions at the Tuxedo residence. ECF No. 28-1, PageID.243. On October 20, 2022, Robson received a PING warrant that provided the approximate location of Heath's cellphone. Between October 20-25, 2022, officers observed Heath "frequently coming and going back and forth between" various "points of interest within Mr. Heath's drug Trafficking Organization [,]" including the Tuxedo and Warwick addresses. *Id*.  Specifically, Robson alleged that, on October 26, 2022,

> Mr. Heath's vehicle leaves the Riverfront Towers in the morning and goes straight to 17205 Warwick St. After staying at 17205 Warwick St Mr. Heath's vehicle goes directly to 3333 Tuxedo (which Mr. Heath

has been observed selling narcotics here in previous surveillance from his Jeep, and has an active 224 Dope Complaint). His vehicle then travels from 3333 Tuxedo back to 17205 Warwick St. He then left 17205 Warwick St, went to the area of Plainview and W. Mcnichols for a short time, then proceeded to go to 2445 Elmhurst St [another suspected narcotics location].

ECF No. 28-1, PageID.243.

In addition to the tracker and cellphone PING information observed on October 26, 2022, Robson set forth facts alleging that DPD had performed surveillance of Heath at 3333 Tuxedo on that date. During that surveillance, officers observed Heath parked in the driveway in his Jeep, they observed multiple people entering the residence and one woman enter for a short stay before exiting. ECF No. 28-1, PageID.243-44. These observations, in Robson's view and based on his training and experience, were consistent with Heath selling narcotics and overseeing narcotics sales at 3333 Tuxedo, in addition to him storing sums of narcotics and narcotics proceeds at 17205 Warwick St, 2445 Elmhurst St, and the Riverfront Towers. *Id*.

Next, Officer Robson averred that on October 27, 2022, officers discovered that Heath had sold his 2020 Jeep Grand Cherokee back to a car dealership on Woodward and W. McNichols in Detroit. The dealership informed Officer Robson that Heath had purchased a black 2022 Jeep Grand Cherokee with the same license plate. Accordingly, Officer Robson obtained a warrant to place a new vehicle tracker

on Heath's 2022 Jeep Grand Cherokee.[1] On November 1, 2022, DPD Officers performing surveillance on 3333 Tuxedo observed Heath at the address sitting in the 2022 Jeep Grand Cherokee. Based on these observations, Officer Robson believed Heath was controlling and overseeing the narcotics sales at 3333 Tuxedo. The affidavit details further surveillance conducted by officers at the Tuxedo and Warwick addresses on November 1, 2022.

Officers made similar surveillance observations at 3333 Tuxedo on November 8, 2022. Specifically, they observed Heath near the address in his 2022 Jeep Cherokee. ECF No. 28-1, PageID.245. Officers also observed people approach Heath in his vehicle and conduct short stays at 3333 Tuxedo. Later that day, DPD obtained a search warrant for 3333 Tuxedo, which, Officer Robson averred, was the residence that Heath "regular[ly] goes to after leaving his apartment/condo in the river front towers and 17205 Warwick." *Id*. Police executed the search warrant on the same day and recovered "sums of cocaine and heroin." *Id*.

On November 10, 2022, Officer Robson monitored the vehicle tracker on Heath's 2022 Jeep Grand Cherokee. Robson observed that Heath was at 17205 Warwick and then traveled to 3333 Tuxedo before going to Riverfront Towers. Meanwhile police surveillance of Heath at the Riverfront Towers allegedly revealed

---

[1] The tracking warrant for Heath's 2022 Jeep is the subject of Heath's Third Motion to Suppress. The Court will discuss that warrant below.

that Heath drove the 2022 Jeep Grand Cherokee with the tracking device installed, Heath parked in the parking structure, walked from the parking structure to a particular apartment on the third floor, and used a key to open the front door. *Id*. Heath allegedly stayed at the apartment in the Riverfront Towers the rest of the night.

Based on: (1) Heath's "continued routine of leaving the [R]iverfront [T]owers" in the morning and then going to either 3333 Tuxedo or 17205 Warwick and then traveling back and forth between the Tuxedo and Warwick addresses before returning to the Riverfront Towers at night, (2) the recovery of narcotics at the Tuxedo residence after execution of a search warrant, (3) Heath's lengthy criminal history involving narcotics, and (4) Robson's training and experience, Robson believed that Heath was storing "narcotics and narcotics proceeds" at 17205 Warwick and his apartment at the Riverfront Towers.

On November 14, Robson reviewed Heath's remote tracking information from November 11, 12, and 13, and observed that on each day, Heath left the Riverfront Towers each morning before going to either 3333 Tuxedo or 17205 Warwick and travelling between the two addresses. ECF No. 28-1, PageID.246-47. On November 13, he also allegedly travelled to a motel, which Robson knew from training and experience to be "commonly used to traffic narcotics." At the end of each day, Heath would return directly from these narcotics-related locations back to his apartment at the Riverfront Towers, where he would remain for the night. *Id*.

20

Based on these observations, Robson believed Heath was storing narcotics, narcotics proceeds, packaging, and proof of narcotics trafficking at both 17205 Warwick and his Riverfront Towers apartment. *Id*.

The search warrant and affidavit were both signed by a Wayne County Assistant Prosecuting Attorney and a state court judge. Heath moves to suppress all the evidence that officers obtained from his residence at the Riverfront Towers apartments on November 15, 2022.

### B.  Applicable Law and Analysis

"[B]ecause the Fourth Amendment requires a search warrant to describe particularly the place to be searched and the persons or things to be seized, the affidavit supporting the search warrant must demonstrate a nexus between the evidence sought and the place to be searched. *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (*en banc*) (emphasis added and internal quotation marks omitted).

Heath argues that "other than indicating that Defendant Heath's registered address is 200 Riverfront Tower . . . and surveillance suggesting that he arrives at that address at the end of the day and leaves there in the morning, the affidavit is totally silent as to anything at all connected Defendant Heath 's residence to drug dealing." ECF No. 23, PageID.136.

Heath's challenge to the affidavit points to an issue that has been addressed by the Sixth Circuit. Indeed, the caselaw in this circuit has rejected the proposition that a defendant's "status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home," *United States v. Brown*, 828 F.3d 375, 383 (6th Cir. 2016) (quoting *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005)), while also recognizing that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Sumlin*, 956 F.3d 879, 886 (6th Cir. 2020) (quoting *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998)). Balancing the tension between these two propositions "in fact-specific ways," courts consider "the recency, frequency, and quantity of the drug dealing and its proximity to the residence as a few of the dividing lines." *United States v. James*, No. 22-3714, 2023 WL 4536086, at *3 (6th Cir. July 13, 2023) (citing *United States v. Reed*, 993 F.3d 441, 448-49 (6th Cir. 2021).

For example, "affidavits describing low-volume drug activity or drug activity in the distant past have been deemed insufficient," see, e.g., *Brown*, 828 F.3d at 378-80, 382-84, while "affidavits describing large quantities of drugs routinely distributed as part of an 'ongoing' drug operation have been approved." *James*, 2023 WL 4536086, at *3; See, e.g., *United States v. Gunter*, 551 F.3d 472, 482 (6th Cir. 2009). But the Court need not decide on which side of the line the affidavit in this case falls because it satisfies the good faith exception.

The exclusionary rule does "not bar the government's introduction of evidence obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir.2005). The "good faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. *United States v. McPhearson*, 469 F.3d 518, 525 (6th Cir. 2006) (quoting *United States v. Leon*, 468 U.S. 897, at 922–23, n. 23, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984)). "In making this determination, all of the circumstances ... may be considered." *Id*.

The good-faith exception, however, does not apply to situations in which an officer's conduct is "sufficiently blameworthy to trigger the exclusionary rule despite a judge's warrant." *Reed*, 993 F.3d at 450. There are four exceptions to the good faith exception that delineate such blameworthy conduct, here, Heath argues that "the good-faith defense does not apply where 'the affidavit is so devoid of information that would support a probable cause determination making any belief that probable cause exists completely unreasonable.'" ECF No. 23, PageID.141. Such a declaration is referred to by courts as a "bare bones" affidavit. *McPhearson*, 469 F.3d at 526.

Heath argues that "the affidavit contained no evidence that he distributed narcotics from his home, that he used it to store narcotics, or that any suspicious

activity had taken place there." ECF No. 23, PageID.137.  He says the following

quote summarizes the problem with the affidavit in this case:

> In sum, our cases teach, as a general matter, that if the affidavit fails to
> include facts that directly connect the residence with the suspected drug
> dealing activity, or the evidence of this connection is unreliable, it
> cannot be inferred that drugs will be found in the defendant's home-
> even if the defendant is a known drug dealer.

*Brown*, 828 F.3d at 385.

In *Brown*, the Sixth Circuit found that "the search warrant affidavit contained

no evidence that Brown distributed narcotics from his home, that he used it to store

narcotics, or that any suspicious activity had taken place there." *Brown*, 828 F.3d at

382. In the court's view, the affidavit did not suggest that a reliable confidential

informant had purchased drugs there, that the police had ever conducted surveillance

at Brown's home, or that recorded telephone conversations linked drug trafficking to

Brown's residence. *Id*. Although Brown's car was registered to the residence and had

tested positive for a canine narcotics search, the court concluded that "[a] more direct

connection was required, such as surveillance indicating that Brown had used the

car to transport heroin from his home to [another drug location] on the day in

question." *Id*. The mere fact that the car was registered to Brown's home was "too

vague and generalized a nexus to support the search warrant." *Id*.

As applied to this case, *Brown's* holding does not suggest that Robson's affidavit is so devoid of information that no officer could rely on it and reasonably believe that probable cause existed to search Heath's Riverfront Towers apartment. Heath's case is not like *Brown* where the "more direct connection" was absent. *Id.* Rather, the very fact the Sixth Circuit deemed necessary to support a finding of probable cause in *Brown* is present here. In this case, the affidavit detailed surveillance indicating that Heath had a routine of traveling from his Riverfront Towers apartment in the morning to either one of two suspected narcotics locations at 3333 Tuxedo or 17025 Warwick and he would travel back and forth between these two addresses. Allegedly, Heath would then return from these suspected narcotics locations to his Riverfront Towers apartment at the end of the day.

As stated in the previous section of this Opinion, there is probable cause to believe that Heath was a drug dealer and that he stored narcotics and conducted ongoing narcotics activities at the Tuxedo and Warwick addresses. Though these facts do not affirmatively establish that Heath stored narcotics related evidence at his Riverfront Towers apartment, a reasonable officer could believe that he transported narcotics evidence from his apartment to the Tuxedo and Warwick addresses, as detailed in the affidavit. Likewise, a reasonable officer, viewing the search warrant and supporting affidavit, could believe that Heath stored narcotics evidence—that is, drugs, money, supplies, etc.—at the Riverfront Towers apartment

since he allegedly returned to the apartment after completing a full day's worth of drug-dealer related transactions and tasks.

Opposing such a conclusion, Heath relies on *United States v. Hughes*. There, the court concluded that the good faith exception did not apply where the facts showed that "the defendant [and his vehicles] [were regularly present] at his house, and his vehicle travelled from there to two houses where drugs were found." *United States v. Hughes*, No. 2:17-CR-20108-TGB, 2018 WL 9907105, at *9 (E.D. Mich. Aug. 7, 2018) (Berg, J.). In the court's view, those facts "merely establish a likelihood that defendant lives there and perhaps a possibility that drugs could be being transported from there to the other locations." *Id*. Accordingly, the *Hughes* court concluded that the affidavit lacked any evidence connecting the defendant's house to the drug dealing; as such, the affidavit failed to satisfy *Brown*'s mandate that "[t]he connection between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'". *Id*. (citing *Brown*, 828 F.3d at 382).

However, the *Hughes* court's ruling relied heavily on *United States v. Christian*, ⸺ F.3d ⸺, No. 17-1799, 2018 WL 3121232 (6th Cir. June 26, 2018). It noted that the "recent published decision [in *Christian*] from the Sixth Circuit support[ed] the conclusion that the good-faith exception should not apply[,]" and the *Hughes* court observed that "the evidence supporting the search and connecting the

residence to drug trafficking in *Christian* was arguably greater than it is in the present case." *Hughes*, 2018 WL 9907105, at *9.[2] But the Sixth Circuit later reversed *Christian* in an *en banc* rehearing. It ruled that the affidavit in that case was supported by probable cause, that police relied on the warrant in good-faith, and the exclusionary rule therefore did not apply. *United States v. Christian*, 925 F.3d 305, 313 (6th Cir. 2019). Because *Hughes* relies heavily on the now overruled 2018 *Christian* decision, the Court finds that *Hughes* is unpersuasive.

The *Christian's en banc* reversal underscores the murky waters existing in the Sixth Circuit pertaining to the nexus that must exist between a drug dealer's illicit activity and his residence when courts consider the probable cause question in

---

[2] The Hughes court noted that "the affidavit in Christian stated that prior warrants executed at the defendant's house (in 2009 and 2011) led to the defendant's arrest for 'maintaining a drug house;' that the defendant had numerous prior arrests for drug-related crimes, spanning a nineteen-year period; that a confidential information identified the defendant as a drug dealer in December 2014; that a controlled buy of drugs was conducted at the defendant's house (in January 2015 – eight months before the warrant in question); that 'within the last four months' several other unnamed informants identified the defendant as a large scale drug dealer; and that on September 3, 2015 (the date the warrant was applied for and issued), an individual was seen walking away from the 'area' of the defendant's house and, shortly thereafter, was arrested in possession of 20 grams of heroin. Despite this evidence of some drug connection to the house, the Sixth Circuit ruled that the warrant was not supported by probable cause, and that the good-faith exception did not apply." *Hughes*, 2018 WL 9907105, at *9. (Internal quotations omitted). The Sixth Circuit viewed this evidence in *Christian* and reversed its ruling. As detailed above.

connection with a search warrant authorizing an intrusion into a drug dealer's residence.

For example, in *United States v. Reed* the Sixth Circuit held—in a published 2021 decision—that the good faith exception applied to a search conducted on a home located on "Bond Road". In support of its decision, the court analyzed one of three affidavits. The affidavit alleged that: (1) Reed was a drug dealer who had engaged in recent drug sales at the "Orchi Road home" and at a store named "OK Tire"; (2) the defendant had conducted controlled drug sales with a reliable informant; (3) the defendant engaged in "suspicious activity" near the Orchi Road home; (4) a car seen at a location identified as the "Bond Road home"—the premises subject to the search warrant—was parked at the Orchi Road home during the defendant's suspected drug sales; (5) police saw the defendant leave his home and travel to suspected narcotics trafficking locations; and (6) police knew of defendant's prior drug convictions. *Reed*, 993 F.3d at 451. In its review of only one of the three affidavits that were issued together and cross referenced with one another, the *Reed* Court concluded that officers reasonably relied on the issuing judge's determination regarding the third affidavit because it established probable cause to believe that the defendant was an active drug dealer engaged in recent drug activities, established probable cause to believe that the defendant lived at the place to be searched, relied on tips from an informant whose reliability had been attested

to in one of the other unchallenged affidavits, and detailed the affiant's experience investigating drug crimes and his beliefs that drugs would be found at the residence. *Id*.

*Reed* is analogous. Here, the affiant relied on tips from an informant that were corroborated by independent surveillance. On several days, Officers observed Heath—an suspected drug dealer—travel from his Riverfront Towers apartment to two alleged narcotics locations in the morning and then return to the apartment at the end of the day. Based on the surveillance, investigation, Heath's prior drug convictions, and the officer's prior experience and training, Officer Robson concluded that Heath likely stored narcotics related evidence at his Riverfront Towers apartment. These facts establish that the affidavit here lands within the purview of the good-faith exception because an officer could reasonably rely on the affidavit and conclude that probable cause existed to believe that Heath stored narcotics related evidence in his Riverfront towers apartment. See *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011) (probable cause existed where a reliable confidential informant had "observed someone come out of [the defendant's] residence, engage in a drug transaction, and then return into the residence").

Since the officers relied on the search warrant in good faith, the exclusionary rule does not apply and Heath's Second Motion to Suppress is **DENIED**.

### 4.  Heath's Third Motion to Suppress

In his third Motion to Suppress, Heath moves the Court for "an order excluding at trial all evidence unlawfully obtained pursuant to the October 27, 2022 warrant for a mobile tracking device on Defendant's vehicle [the 2022 Jeep] and for a hearing pursuant to *Franks v Delaware*, 438 U.S. 154 (1978)."

In *Franks v. Delaware*, the Supreme Court held that if, after an evidentiary hearing, a defendant establishes by a preponderance of evidence that a false statement—made knowingly and intentionally, or with reckless disregard for the truth—was included by affiant in the search warrant affidavit, and—with the affidavit's false material set aside—the affidavit's remaining content is insufficient to establish probable cause, "the search warrant must be voided and fruits of search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156.  "In order to obtain a [Franks] hearing," however, "the defendant must make a substantial preliminary showing that a false statement[,] [made] knowingly or intentionally, or with reckless disregard for the truth, was included in the affidavit." *United States v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002). The Defendant must also make a preliminary showing that the "exclusion of the allegedly false statement … results in a lack of probable cause." *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998). It is the defendant's burden to

"specifically point to the disputed portions of the challenged affidavit and … support these charges with an offer of proof." *Stewart*, 306 F.3d at 304.

The affidavit makes pertinent allegations regarding officer surveillance of Heath's movements on October 26, 2022. Notably, it alleges that he left his residence at the Riverfront Towers in the morning and traveled to suspected drug locations at 3333 Tuxedo, 17205 Warwick, and 2445 Elmhurst, as well as the "short time" he spent at Plainview and W. McNichols. ECF No. 29-1, PageID.272. Consistent with the allegations discussed above with respect Heath's other two Motions to suppress, Robson concluded, based on the allegations stated above, that Heath sells and distributes narcotics at 3333 Tuxedo. He also concluded that Heath stores sums of narcotics and proceeds at 17205 Warwick St, 2445 Elmhurst St, and at the Riverfront Towers. Police also surveilled three individuals enter 3333 Tuxedo at different times. Two of them stayed inside the residence upon the completion of surveillance and one of them stayed for only five minutes. Officers also observed Heath's 2020 Jeep in the driveway at 3333 Tuxedo. Based on these facts Robson concluded that Heath oversees drug transactions at the residence.

On October 27, 2022, Robson discovered that Heath sold his 2020 Jeep back to the car dealership and purchased a 2022 Jeep. Robson believed, based on training and experience, that people involved in narcotics trafficking commonly store narcotics evidence in their vehicles. Thus, he concluded that Heath was likely

utilizing his 2022 Jeep to transport and distribute narcotics and narcotics proceeds. ECF No. 29-1, PageID.273. Based on the foregoing, a tracker warrant was issued for Heath's 2022 Jeep on October 27, 2022.

In his Motion, Heath maintains that these allegations contain a false statement because "Heath and his 2020 Jeep had been at a car dealership on October 26, 2022 [and] were not at the Tuxedo, Warwick, Elmhurst residences on October 26, 2022, nor was he and his vehicle in the area of Plainview and W. McNichols for a short period of time on that date." ECF No. 24, PageID.163.

Heath fails to make a substantial preliminary showing that the affidavit contained a deliberate falsehood or that it contained a statement made with reckless disregard for the truth. The problem with Heath's argument is that he fails to specify the time period he spent at the dealership, and he does not make allegations showing that he could not have gone to the dealership, got the 2022 Jeep, and also travelled to the locations described in the affidavit within the same day. Without a preliminary showing of this impossibility, Heath's argument—that Robson's statements were deliberately false or that they were made with reckless disregard for the truth—is not particularly strong. Further, his argument is infirm because he fails to submit any offer of proof, documents, affidavits, or sworn declarations in support of his contentions. See *Stewart*, 306 F.3d at 305 (rejecting *Franks* claim when, *inter alia*,

defendants failed to "present[ ] the district court with any affidavits to support their claim that the affidavit was false in any respect").

Moreover, even without the challenged statements, the search warrant sets forth sufficient probable cause to believe that Heath used his 2022 Jeep to transport or store narcotics evidence. This case is similar to *United States v. Coleman*, where the Sixth Circuit affirmed a finding of probable cause for a vehicle tracker warrant. *Coleman*, 923 F.3d at 454. There, the affidavit set forth that: (1) an informant had identified the defendant as a current drug supplier, (2) authorities had been investigating a drug sale involving the defendant, (3) authorities observed defendant complete a short stay in the target vehicle, (4) defendant had two prior felony convictions for delivery/manufacture of controlled substance, and (5) a law enforcement database identified target vehicle as belonging to the defendant's father). *Id*. Affirming the probable cause finding, the Court noted that "Courts have upheld vehicle-tracking warrants based on much weaker factual allegations than these." *Id*. (citing *United States v. Faulkner*, 826 F.3d 1139, 1145 (8th Cir. 2016) ("upholding a vehicle-tracking warrant where a confidential informant told police that the defendant brought heroin from Chicago to Minneapolis, stayed at two addresses, and drove two vehicles, but where no one had directly observed either vehicle involved in suspected drug activity.").

Even if Heath did not appear at 3333 Tuxedo, 17205 Warwick, and 2445 Elmhurst, and did not stay for a short time at Plainview and W. McNichols on October 26, 2022, the affidavit alleges sufficient probable cause to support the tracker warrant. Indeed, it alleges that Heath traded in his 2020 Jeep for a 2022 Jeep on or before October 27, 2022. Similar to *Coleman*, DPD investigated and independently corroborated an informant's allegations that Heath was trafficking narcotics in Detroit. DPD's investigation and corroboration was based on surveillance they conducted on multiple dates, including October 10 and 18, 2022. Moreover, officers used a combination of cellphone location monitoring and surveillance to determine that, between October 20 and October 25, 2022, Heath frequently traveled between the three residences associated with narcotics trafficking, 17205 Warwick, 2445 Elmhurst, 3333 Tuxedo. And Heath has eight prior felony drug convictions. Based on the foregoing, the Court finds that tracker warrant was supported by sufficient probable cause.

Heath fails to make a substantial preliminary showing that a false statement, made knowingly or intentionally, or with reckless disregard for the truth, was included in the affidavit. And he fails to show that the exclusion of the allegedly false statement results in a lack of probable cause.

Accordingly, the Third Motion to Suppress and for a Franks hearing is **DENIED**.

## IV.    Conclusion

All of Heath's Motions to Suppress are **DENIED**.

**IT IS SO ORDERED.**


 /s/ Gershwin A. Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  January 9, 2024


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 9, 2024, by electronic and/or ordinary mail.
s/ Lisa C. Bartlett
Case Manager